IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.

UNITED STATES OF AMERICA,

        Plaintiff,

v.

1.      17,082.3565 TETHER USD (USDT)

        Defendant.

---

**VERIFIED COMPLAINT FOR FORFEITURE *IN REM***

---

The United States of America, ("the United States") by and through United States Attorney Cole Finegan and Assistant United States Attorney Kurt J. Bohn, pursuant to Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions G(2), states:

## JURISDICTION AND VENUE

1. The United States of America ("the United States") has commenced this action pursuant to the civil forfeiture provisions of 18 U.S.C. § 981(a)(1)(C), seeking forfeiture of the defendant asset as proceeds traceable to one or more violations of 18 U.S.C. § 1343. In addition, the United States has also commenced this action pursuant to the civil forfeiture provisions of 18 U.S.C. § 981(a)(1)(A), seeking forfeiture of the defendant property involved in violations of 18 U.S.C. §§ 1956 and 1957, or property traceable thereto.

2. This Court has jurisdiction under 28 U.S.C. §§ 1345 and 1355. Venue is proper 28 U.S.C. § 1395, as the defendant property is located, and the acts described herein occurred in the District of Colorado.

## DEFENDANT PROPERTY

3. Defendant property is more fully described as:

4. Defendant 17,082.3565 Tether USD (USDT) seized from Binance.com wallet #1973 in the name of Rassul Alpyspayev Muratovich was seized on May 16, 2023, and is currently in the custody of the United States Secret Service.

## CRYPTOCURRENCY TERMS

5. Virtual currencies are digital tokens of value circulated over the Internet as substitutes for traditional fiat currency. Virtual currencies are not issued by a government or bank like traditional fiat currencies such as the U.S. dollar but are generated and controlled through computer software. Bitcoin is currently the most well-known virtual currency in use.

6. Virtual currency addresses are the particular virtual locations to which such currencies are sent and received. A virtual currency address is analogous to a bank account number and is represented as a string of alphanumeric characters.

7. Each virtual currency address is controlled through the use of a unique corresponding private key, a cryptographic equivalent of a password needed to access the address. Only the holder of an address's private key can authorize a transfer of virtual currency from that address to another address.

8. A virtual currency wallet is a software application that interfaces with the virtual currency's specific blockchain and generates and stores a user's addresses and

private keys. A virtual currency wallet also allows users to send and receive virtual currencies. Multiple addresses can be stored in a wallet.

9. Wallets can be hosted (custodial) or un-hosted (non-custodial or cold storage/self-custody). A hosted or custodial wallet is a wallet managed by a third party, such as a cryptocurrency exchange. The custodian stores and manages the private keys, keeping funds secure even if a user forgets their password. An un-hosted or noncustodial wallet, also known as cold storage or self-custody wallets, allows the user to maintain a cryptocurrency balance outside of an exchange. Using Ledger or Tresor hardware wallets are examples or un-hosted wallets. With an un-hosted or non-custodial wallet, losing the private key is synonymous with losing access to the cryptocurrencies.

10. Many virtual currencies publicly record all of their transactions on what is a "blockchain". The blockchain is essentially a distributed public ledger, run by a decentralized network, containing an immutable and historical record of every transaction utilizing that blockchain's technology. The blockchain can be updated multiple times per hour and record every virtual currency address that ever received that virtual currency. It also maintains records of every transaction and all the known balances for each virtual currency address. There are different blockchains for different types of virtual currencies.

11. Ethereum (ETH) is a type of virtual currency, circulated over the Internet. Ethereum is not issued by any government, bank, or company, but rather are controlled through computer software operating via a decentralized, peer-to-peer network. Ethereum is just one of many varieties of virtual currency. Ethereum are sent to and received from Ethereum "addresses." An Ethereum address is somewhat analogous to

a bank account number and is represented as a case-sensitive string of letters and numbers of a specified length.

12.     Each Ethereum address is controlled through the use of a unique corresponding private key. This key is the equivalent of a password, or PIN, and is necessary to access the funds associated with a Ethereum address. Only the holder of an address's private key can authorize transfers of Ethereum from that address to other Ethereum addresses. Users can operate multiple Ethereum addresses at any given time and may use a unique Ethereum addressor each and every transaction.

13.     To acquire Ethereum, a typical user purchases them from a virtual currency exchange.  A virtual currency exchange is a business that allows customers to trade virtual currencies for other virtual currencies or other forms of value, such as conventional fiat money (e.g., U.S. dollars, Russian rubles, euros).  Exchanges can be brick-and-mortar businesses (exchanging traditional payment methods and virtual currencies) or online businesses (exchanging electronically transferred money and virtual currencies). Virtual currency exchanges doing business in the United States are regulated under the Bank Secrecy Act and must collect identifying information about their customers and verify their clients' identities.

14.     To transfer Ethereum to a different Ethereum address, the sender transmits a transaction announcement, which is electronically signed with the sender's private key, across the peer-to-peer Bitcoin network. To complete a transaction, a sender needs only the Ethereum address of the receiving party and the sender's own private key. This information on its own rarely reflects any identifying information about either the sender or the recipient. As a result, little-to-no personally identifiable information about the sender

or recipient is transmitted in a Ethereum transaction itself. Once the sender's transaction announcement is verified by the network, the transaction is added to the blockchain, a decentralized public ledger that records every Ethereum transaction. The blockchain logs every Ethereum address that has ever received Ethereum and maintains records of every transaction for each Ethereum address.

15. Each transaction that occurs on the blockchain is recorded through a transaction hash ID. The hash ID shows how much cryptocurrency is being transferred, the wallet addresses of the sender and recipient(s), and what time the transaction occurred. The hash ID is analogous to a receipt when purchasing items from a store, but it is made publicly available via the Ethereum blockchain.

16. While an Ethereum address owner's identity is generally anonymous within the blockchain (unless the owner opts to make information about the owner's Ethereum address publicly available), investigators can use the blockchain to identify the owner of a particular Ethereum address. Because the Ethereum serves as a searchable public ledger of every Ethereum transaction, investigators can trace transactions to, among other recipients, Ethereum exchangers. Because Ethereum exchangers generally collect identifying information about their customers, as discussed above, subpoenas or other appropriate legal process submitted to exchangers can, in some instances, reveal the true identity of an individual responsible for a Ethereum transaction.

17. The Ethereum blockchain is capable of computer protocols, often referred to as "smart contracts." These "smart contracts" are self-executing lines of code that are used to ensure that a contract between parties executes as expected on agreed upon terms.

**FRAUD SCHEME**

18. The United States Secret Service (USSS) is investigating cryptocurrency and fraudulent digital asset investment scams which target victims using social media platforms. One such scam, called a "giveaway scam," typically occurs when a victim "follows" a person on social media whom they believe to be a real public figure when in reality, they are a scammer promising investors free cryptocurrency assets in return for participating in a giveaway promotion. Victims are tricked into making investments into cryptocurrency or digital asset projects under the pretense that they will receive cryptocurrency in return.

19. Victim payments are made via bank or wire transfer, and frequently involve victims being directed to visit fraudulent cryptocurrency applications or websites with wallet addresses which lead to criminal wallets. These criminal wallets are quickly cashed out through cryptocurrency exchanges.

20. This type of fraud uses fraudulent websites or cryptocurrency trading applications designed to convince victim users that they are legitimate platforms. The platforms often use web addresses that are similar to actual cryptocurrency exchanges to conceal their true nature. The fraudulent platforms display false balances and values of cryptocurrency which appears to be increasing in value to further the scam. When victims attempt to withdraw their funds, they are unable to. The victim funds are often immediately diverted after they are initially sent.

**INVESTIGATION**

21. In April 2023, the Douglas County Sheriff's Office contacted the USSS to report a victim of a fraudulent cryptocurrency giveaway scam ("the Victim"). The Victim

was a resident of Douglas County, Colorado, and reported that she had been following an Instagram account that she believed to belong to Ethereum blockchain co-founder, Vitalik Buterin.  The account was named buterun_vitalik.eth, and promoted a giveaway where followers could participate in a giveaway on the website crypto-eth.net.  The website promised double the crypto investments sent by visitors.  After their initial investment, visitors of the website would see double the amount of Ethereum (ETH) in their account.

22. On December 23, 2022, the Victim transferred 130 ETH, which totals $158,612 as of the date of transfer, out of her Coinbase account into the wallet address listed on the scam website crypto-eth.net 0xc4be4a14d4e61b2da5dd7ee64cba8e85766dfd3d (hereinafter referred to as "Scam Wallet fd3d").

23. The scam website crypto-eth.net no longer exists, but investigators were able to view an archived version of the website to see what it looked like on December 27, 2022.  The website told users how to send funds and receive the amount in either Ethereum or Bitcoin, and included false endorsement from Buterin for the giveaway.  The website was first registered on December 15, 2022, and is hosted on a server located in Charleston, Saint Kitts and Nevis.

## TRACING

### Tracing to OKX Wallet Address 1973

24. As stated above, the Victim made a payment of 130 ETH on December 23, 2023, from her Coinbase account.  The funds were transferred into Scam Wallet fd3d the next day.

25. Scam Wallet fd3d had received a total of 0.85745 ETH through four previous transactions from other addresses before receiving the 130 ETH from the Victim. After receiving the Victim funds, 78.514 ETH were withdrawn from Scam Wallet fd3d and cashed out through various exchanges. Those funds could not be recovered.

26. As described in more detail below, on February 16, 2023, Scam Wallet fd3d initiated four transactions totaling 33 ETH of the 130 ETH into four different wallet addresses. These four wallet addresses subsequently sent the 33 ETH to a wallet hosted in an OKX account belonging to Rassul Alpyspayev Muratovich, cryptocurrency wallet address: 0x436ea26964c6dec3ba65f1195cba9e584d2a1973 (hereinafter "Muratovich Wallet 1973").

  a. **Transfer 1** - On February 16, 2023, at 17:32:59 UTC Scam Wallet fd3d transferred 3 ETH to wallet address 0x21055084c3c0d475c06475cda4d0818d7197dfac through the transaction hash ID

   0xf349a0509f4cffe4f097b91d6a96546dd42a4626cf7814bc95023ea15c190526.

  b. **Transfer 2** - On February 16, 2023, at 18:10:23 UTC Scam Wallet fd3d transferred 10 ETH to wallet address 0x9455a4cfde71d935dd9d8254569e08d137aabca2 through the transaction hash ID 0x9a83a8b3fbce3d2073fc65daa555b49760464c5843bf206c5c639290911d6450.

  c. **Transfer 3** - On February 16, 2023, at 18:49:23 UTC Scam Wallet fd3d transferred 10 ETH to wallet address 0x35030562574290a94a33fa390b783629869a258d4 through the transaction hash ID 0xa15262251f8c26025c72b12a30b1a52d808263e4ac4e93322efc44f3233cdb70.

      d.      **Transfer 4 -** On February 16, 2023, at 19:38:35 UTC Scam Wallet fd3d transferred 10 ETH to wallet address 0x8b8d618b92bd2608add6cd9f97aeeb18c3ac2033 through the transaction hash ID 0x0c39c906e66d77141de01f3bf82f46fc357cdb61e60fbd3882c737e8f63e6fed.

27.      Muratovich Wallet 1973 is hosted by OKX, a Seychelles-based cryptocurrency exchange and derivatives exchange that is not currently available to US-based investors.

28.      The OKX account associated with Muratovich Wallet 1973 was opened on December 27, 2022.  The sole signatory on the account is Rassul Alpyspayev Muratovich.  Since Muratovich Wallet 1973 was opened, a single "approved device" has logged into the account through multiple IP addresses, which geolocate to Russia, Netherlands, and India.

29.      On March 12, 2023, Muratovich Wallet 1973 was frozen containing 9.996 ETH, valued at approximately $17,106.37 USD on May 1, 2023.

30.      On May 5, 2023, pursuant to a federal seizure warrant, defendant 17,082.3565 Tether USD (USDT)[1] was seized as proceeds of wire fraud and proceeds of, or money involved in, violations of 18 U.S.C. § 1956 and 1957.

**Tracing to ChangeNow Wallet Address 97d0**

31.      As stated above, the Victim made the initial transfer of 130 ETH on December 24, 2022, to Scam Wallet fd3d.

---

[1] OKX transferred the value of the Ethereum at the time of seizure to Tether USD, which is another form of cryptocurrency, so that it did not gain or lose value, as Tether is tied to the U.S. dollar.

32. On February 16, 2023, Scam Wallet fd3d sent 1 ETH to wallet address 0x60a76ea8f1cf1af33e51e40a4cd2dfc569acffce (hereinafter "Wallet ffce"), a wallet owned by the exchange ChangeNow located in Saint Vincent and the Grenadines.

33. On March 30, 2023, Wallet ffce sent 0.9992 ETH to wallet address 0x185cc2b020e03b4fffa112e2b0b378b5a41f97d0, a ChangeNow owned wallet address.

34. On May 5, 2023, ChangeNow voluntarily suspended the transaction. On May 17, 2023, a federal seizure warrant was served for the Ethereum held in Wallet ffce. These funds are not currently in United States custody.

## **Conclusion**

35. Accordingly, as outlined above, the defendant asset constitutes or was derived from proceeds of wire fraud, and constitute property involved in specified unlawful activity, and is therefore forfeitable to the United States pursuant to 18 U.S.C. § 981(a)(1)(A) and (C).


VERIFICATION OF MATTHEW AVISCHIOUS
SPECIAL AGENT, UNITED STATES SECRET SERVICE

I, Matthew Avischious, hereby state and aver under the pains and penalties of perjury that I have read the foregoing Factual Basis for Forfeiture and that the facts and information contained therein are true.

s/ *Matthew Avischious*
Matthew Avischious
Special Agent, USSS

**FIRST CLAIM FOR RELIEF**

36. The Plaintiff repeats and incorporates by reference each of the paragraphs above.

37. By the foregoing and other acts, defendant 17,082.3565 Tether USD (USDT) constitutes property involved in violation of 18 U.S.C. §§ 1956 and 1957, or property traceable to such property, and is therefore forfeitable to the United States pursuant to 18 U.S.C. § 981(a)(1)(A).

**SECOND CLAIM FOR RELIEF**

38. The Plaintiff repeats and incorporates by reference each of the paragraphs above.

39. By the foregoing and other acts, defendant 17,082.3565 Tether USD (USDT) constitutes or was derived from proceeds traceable to violations of wire fraud in violation of 18 U.S.C. § 1343 and is therefore forfeitable to the United States pursuant to 18 U.S.C. § 981(a)(1)(C).

WHEREFORE, the United States prays for entry of a final order of forfeiture for the defendant assets in favor of the United States, that the United States be authorized to dispose of the defendant assets in accordance with law, and that the Court enter a finding of probable cause for the seizure of the defendant assets and issue a Certificate of Reasonable Cause pursuant to 28 U.S.C. § 2465.

\\\

\\\

\\\

DATED this 23rd day of January 2024.

        Respectfully submitted,

        COLE FINEGAN
        United States Attorney

By:  *s/Kurt J. Bohn*
       Kurt J. Bohn
       Assistant United States Attorney
       United States Attorney's Office
       1801 California Street, Suite 1600
       Denver, CO 80202
       Phone: (303) 454-0100
       Email: Kurt.Bohn@usdoj.gov
       *Attorney for the United States*